UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 04-60206-CR-COHN

UNITED STATES OF AMERICA,

vs.

BERNARD ROEMMELE,

Defendant.

_____/

## REPORT AND RECOMMENDATION ON DEFENDANT ROEMMELE'S MOTIONS TO DISMISS (DE 772, DE 773)

I.    INTRODUCTION

THIS CAUSE is before the Court on two motions to dismiss: (1) Motion by Defendant Bernard Roemmele, Pro Se, Pursuant to Rule 12(b)(3)(B), to Dismiss Indictment – Because the Indictment was Returned after the Grand Jury's Term Expired and is Therefore Invalid ("Motion–Grand Jury") (DE 772); and (2) Motion by Defendant Bernard Roemmele, Pro Se, Pursuant to Rule 12(b)(3)(B), to Dismiss the Indictment, Because it Fails to State an Offense ("Motion–Offense") (DE 773). The motions were referred to the undersigned pursuant to 28 U.S.C. § 636 and Magistrate Rule 1(c) and (d), Local Rules of the United States District Court for the Southern District of Florida (DE 776). For the reasons set forth more fully below, the undersigned RECOMMENDS that both motions (DE 772, DE 773) be DENIED.

II.   PROCEDURAL HISTORY

On August 27, 2004, a federal grand jury returned an indictment charging Defendant Bernard Roemmele ("Roemmele") with four criminal violations: Count 1 – RICO conspiracy,

in violation of 18 U.S.C. § 1962(d); Count 2 – mail and wire fraud conspiracy, in violation of 18 U.S.C. § 371; Count 3 – money laundering conspiracy, in violation of 18 U.S.C. § 1956(h); and Count 5 – securities fraud, in violation of 15 U.S.C. §§ 78j(b), 78ff(a). Indictment (DE 3). On August 15, 2006, Roemmele was convicted by a jury of all four counts. Jury Verdict (DE 388). And on January 26, 2007, Roemmele was sentenced to a 144-month term of imprisonment and a 3-year term of supervised release; he was also ordered to pay more than $14 million in victim restitution (DE 606).

On September 14, 2010, the Eleventh Circuit affirmed Roemmele's convictions but vacated his sentence and remanded the case for resentencing consistent with the dictates of its opinion. See United States v. Hein, 395 F. App'x. 652, 654-55 (11th Cir. 2010).

On February 15, 2011 – as the case remained pending before the Court of Appeals – Roemmele moved in the District Court to dismiss the indictment because it allegedly was returned after the grand jury's term had expired (DE 772). And on February 16, 2011, Roemmele moved in the District Court to dismiss the indictment because it allegedly fails to state an offense (DE 773).

On July 1, 2011, the Eleventh Circuit denied Roemmele's petition for rehearing (DE 811), and on July 11, 2011, it issued its judgment and opinion as the court's mandate (DE 814). But on July 21, 2011, Roemmele moved to stay execution of the mandate (DE 817), and on July 22, 2011, the Eleventh Circuit recalled its mandate (DE 819).

III.    THE MOTIONS

    A.    Timeliness

Federal Rule of Criminal Procedure 12(b)(3) enumerates those motions that must be raised before trial, yet it also sets forth two exceptions that may be raised at any time

2

that the case is pending:

> (3) The following must be raised before trial:

> * * * *

> (B) a motion alleging a defect in the indictment or information – but <u>at any time</u> while the case is <u>pending</u>, the court may hear a claim that the indictment or information <u>fails to invoke the court's jurisdiction or to state an offense</u>[.]

Fed. R. Crim. P. 12(b)(3)(B) (emphasis added). "[A] case is no longer pending for the purposes of Rule 12(b)(3)(B) once the mandate has issued in the direct appeal." <u>United States v. Smith</u>, No. 09-16191, 2011 WL 1168851, at *2 (11th Cir. Mar. 30, 2011). Because Roemmele filed the instant motions (DE 772, DE 773) before any mandate had issued on direct appeal, and therefore while the case was "pending," this Court may consider his motions, but only to the extent that they are actually directed to the Court's jurisdiction or the indictment's statement of an offense;[1] to the extent that these motions

---

[1] It is unsettled whether an indictment issued by a grand jury whose term has expired fails to invoke the court's jurisdiction and, therefore, can be challenged at any time while the case is pending. <u>See</u> <u>United States v. Bolton</u>, 893 F.2d 894, 900 (7th Cir. 1990) (challenges based on an improperly constituted grand jury are challenges to court's jurisdiction that may be raised at any time under Rule 12); <u>United States v. Macklin</u>, 523 F.2d 193, 195-96 (2d Cir. 1975) (expired grand jury term amounted to a lack of jurisdiction, and therefore objections can never be forfeited or waived). <u>But see</u> <u>United States v. Jimenez-Alvarado</u>, 322 F. App'x 479, 480-81 (9th Cir. 2008) (expired grand jury term is not defect of kind that deprived court of subject matter jurisdiction, and therefore objections can be waived). Assuming, <u>arguendo</u>, that an indictment returned by an expired grand jury does fail to invoke the court's jurisdiction, the undersigned will address Roemmele's motion alleging that the grand jury's term had expired.

Further, the court may entertain a motion alleging that the indictment fails to state an offense at any time while the case is pending, even on remand for resentencing. <u>See</u> <u>United States v. Gama-Bastidas</u>, 222 F.3d 779, 785 (10th Cir. 2000) ("Accordingly, we may consider Gama-Bastidas' challenge to the sufficiency of his indictment even though he raised it for the first time on remand for resentencing."); <u>United States v. Adesida</u>, 129 F.3d 846, 850 (6th Cir.1997) ("Even though defendant did not raise his argument that Count One fails to charge an offense in the prior appeal, this argument has not been waived."); <u>see also</u> <u>United States v. Rosnow</u>, 9 F.3d 728, 730 (8th Cir.1993) ("defendant may raise

raise other arguments, they are untimely.

B.    Motion Based on Alleged Expiration of Grand Jury Term (DE 772)

Roemmele moves to dismiss the instant indictment pursuant to Rule 12(b)(3)(B) on the ground that it was returned after the grand jury's term expired and that the indictment is therefore invalid and fails to invoke the court's jurisdiction (DE 772). Because this motion lacks any basis in fact, it should be denied.

Roemmele alleges that the grand jury that indicted him in August 2004 had been empaneled in January 2001.[2] See Motion–Grand Jury at 2, 15 (DE 772). He reasons that because the 43-month period between the alleged January 2001 empaneling of the grand jury and the August 2004 return of the indictment far exceeds the 18-month term limit prescribed by Federal Rule of Criminal Procedure 6(g), the indictment is invalid and the Court is without jurisdiction to enter judgment against him.[3] See Motion–Grand Jury at 2,

---

at any time the claim that the indictment fails to state an offense"); United States v. Bullock, 914 F.2d 1413, 1414 (10th Cir.1990) ("[T]he failure of an indictment to state an offense is a fatal defect that may be raised at any time.").

[2] In his reply memorandum, Roemmele argues for the first time that the indicting grand jury's number, 04-01, "is a fabrication of the original, and is not a reliable basis for proving that grand jury number 04-01 had indicted this case." However, Local Rule 7.1.C provides that a reply memorandum must be "strictly limited to rebuttal of matters raised in the memorandum in opposition." Judges in this district, therefore, have repeatedly rejected attempts by parties to raise new arguments in reply memoranda. See, e.g., Flamenbaum v. Orient Lines, Inc., No. 03-22549-Civ, 2004 WL 1773207, at *14 (S.D. Fla. July 20, 2004); Plante v. USF&G Speciality Ins. Co., No 03-23517-Civ, 2004 WL 741382, at *5 n.3 (S.D. Fla. Mar. 2, 2004); Martinez v. Weyerhaeuser Mortgage Co., 959 F. Supp 1511, 1515-16 (S.D. Fla. 1996); see also United States v. Levy, 379 F.3d 1241, 1244 (explaining that arguments raised for first time in reply brief are not properly before appellate court). Yet, even if this Court were to consider Roemmele's rebuttal argument, it is without any basis in fact. See Grand Jury Cover Sheet Case No. 04-60206 (attached).

[3] In pertinent part, Rule 6(g) provides:

14, 15, 16 (DE 772) (citing <u>United States v. Fein</u>, 504 F.2d 1170, 1173 (2d Cir. 1974) (vacating judgment of conviction and sentence because indictment returned after grand jury's expiration).

Roemmele is correct in noting that the grand jury returned the indictment in which he is charged in August 2004. Indictment at 1 (DE 3). But Roemmele is not correct in alleging that the indicting grand jury had been empaneled in January 2001. Motion–Grand Jury at 3 (DE 772). Contrary to Roemmele's claim, this Court's own records show that the grand jury that returned the Roemmele indictment was empaneled not in January 2001, but on May 7, 2004. See Grand Jury Cover Sheet Case No. 04-60206 ("Grand Jury Cover Sheet") (stating "the grand jury of this court, begun . . . on the 7th day of May, 2004" and identifying grand jury number as "FGJ#04-01(FL)" under foreperson signature line) (attached);[4] see also Motion to Seal (DE 1) (stating "Federal Grand Jury 04-01 (FL)" in caption); Order to Seal (DE 2) (same). The 18-month period that commenced on May 7, 2004, clearly includes August 24, 2004, the precise date on which the Roemmele indictment was returned. See Grand Jury Cover Sheet (attached) (showing date of

> A grand jury must serve until the court discharges it, but it may serve more than 18 months only if the court, having determined that an extension is in the public interest, extends the grand jury's service. An extension may be granted for no more than 6 months, except as otherwise provided by statue.

Fed. R. Crim. P. 6(g); see <u>United States v. Lacey</u>, No. 94-1030, 1995 WL 258142, at *4 (6th Cir. May 2, 1995) (finding superseding indictment returned by a grand jury other than that which returned original indictment valid where subsequent grand jury acted well within the 18-month term of service allowed under Fed. R. Crim. P. 6(g))

[4] The undersigned has ordered that the Grand Jury Cover Sheet (attached hereto) be unsealed, but that the foreperson's signature and the precise number of grand jurors concurring be redacted.

indictment).  Because Roemmele was indicted within 4 months – not 43 months – of the empaneling of the indicting grand jury and, therefore, well within the prescribed 18-month period, the grand jury's term had not expired, the indictment is not invalid, and the motion (DE 772) should be denied.

C.    Motion Based on Alleged Failure of Indictment to State an Offense (DE 773)

Roemmele has also moved to dismiss the indictment pursuant to Rule 12(b)(3)(B) (purportedly) on the ground that it fails to state an offense.  See Motion–Offense at 1 (DE 773).  Roemmele predicates his motion on the assumption that the internet activity for which he is being held accountable is not governed by the wire fraud statute (18 U.S.C. § 1343), which statute underpins the RICO conspiracy (Count 1), the wire and mail fraud conspiracy (Count 2), and the money laundering conspiracy (Count 3) charges. Motion–Offense at 2-3 (DE 773).  According to Roemmele, "'Internet communications' or 'Internet services' (which are 'electronic communications'), is simply not within the scope of the wire fraud statute; nor can it be, as the Federal government may not specifically regulate the Internet."  Motion–Offense at 3 (DE 773).  For that same reason, he argues that evidence of internet fraud cannot sustain a conviction predicated on the wire fraud statute and that the term "wire communication," as used in the wire fraud statue, is unconstitutionally vague, as applied to him.  Motion–Offense at 18, 21, 30 (DE 773).  His arguments are unavailing.

1.    Internet Communication as Wire Communication

Underpinning each of Roemmele's arguments is the assumption that a transmission by means of the internet is not a transmission by means of "wire . . . communication," as

6

that term is used in the wire fraud statute, 18 U.S.C. § 1343.[5] Roemmele sets forth the basis for this assumption: because "Congress did not define [the term wire communication] within the wire fraud statute . . . the accused is left to search for a definition to understand what conduct is considered to be 'wire communication.'" Motion–Offense at 19 (DE 773). Roemmele's "search" takes him to the definition of "wire communication" found in the Wiretap Act, 18 U.S.C. § 2510; that definition requires that a "wire communication" be an "aural transfer." Motion–Offense at 21 (DE 773). From this definition, he concludes that the "'plain meaning' of 'wire communication' as used in the wire fraud statute, must . . . mean[ ] a transmission that contains human voice [any aural transfer]." Motion–Offense at 26 (DE 773). He further asserts that internet communication more properly comes within the scope of the Wiretap Act's "electronic communication" definition. See Motion–Offense at 26 (DE 773).

Roemmele's reliance upon the Wiretap Act (18 U.S.C. § 2510) is misplaced. He offers no authority that the Wiretap Act's definition of "wire communication" is applicable to the wire fraud statute (18 U.S.C. § 1343). Indeed, by their express terms, the Wiretap Act's definitions are limited to Chapter 119, see 18 U.S.C. § 2510 ("As used in this chapter"); by

---

[5] In pertinent part, the wire fraud statute provides:

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be . . . .

18 U.S.C. § 1343 (emphasis added).

contrast, the wire fraud statute, 18 U.S.C. § 1343, is found within Chapter 63. Further, as the text of the wire fraud statute makes clear, § 1343 governs the wire transmission of "any writing, signs, signal, pictures, or sounds," and, therefore, by its terms is not limited to aural transfers.

Moreover, courts have long recognized that the wire fraud statute governs fraud committed via the internet. See, e.g, United States v. Rodriguez, No. 3:07-cr-414-PJB, 2008 WL 5157891, at *1 (D. Puerto Rico Dec. 9, 2008) ("The wire fraud statute makes it unlawful for any person having devised or intending to devise any scheme or artifice to defraud to use interstate wires such as telephone lines or the internet for the purpose of executing the fraud scheme.") (emphasis added) (internal quotations omitted); American Auto Guardian, Inc. v. Kramer, No. O5 C 6404, 2008 WL 4553092, at *6 (N.D. Ill. July 8, 2008) ("[defendant] used the wires in furtherance of a scheme when she used the internet . . ."); Sophia v. Myicis, No. C 07-02364 SI, 2008 WL 5411479, at *2 (N.D. Cal. Dec. 29, 2008) ("use of the internet qualifies as use of the United States wires"); see also, e.g., United States v. Leger, 377 F. App'x 911, 912-13 (11th Cir. 2010) ("[b]ecause these FAFSA forms were transmitted through the internet and through regular mail, there is also overwhelming evidence supporting his conviction for Pell Grant fraud and wire fraud."); United States v. Stephens, 571 F.3d 401, 406 (5th Cir. 2009) (evidence that included emails between defendants about scheme and money deposited into defendant's accounts derived from fraudulent website supported wire fraud conviction); United States v. Drummond, 255 F. App'x 60, 64-65 (6th Cir. 2007) (defendant who made reservations over the internet using credit card issued to another sufficient to support wire fraud conviction); United States v. Curry, 461 F.3d 452, 457 (4th Cir. 2006) (defendant committed wire fraud each time he sent wire communication

8

over internet to facilitate a fraudulent sale); United States v. Gajdik, 292 F. 3d 555, 556 (7th Cir. 2002) (defendant's operation of scheme to defraud over internet website eBay constituted wire fraud); United States v. Lee, 296 F.3d 792 (9th Cir. 2002) (wire fraud conviction for sales from fraudulent website); United States v. Pirello, 255 F.3d 728, 729-30 (9th Cir. 2001) (fraudulent advertisements on the internet that induced buyers to send money to defendant constituted wire fraud).[6]

In sum, Roemmele's assumption that the wire fraud statute does not govern fraudulent internet communications is without merit.

## 2.    Failure to State a Claim

Roemmele characterizes his motion as one based on a failure to state an offense. See Motion–Offense (DE 773). Where a defendant seeks to genuinely raise such a claim, he may do so at any time that the case is "pending." Roemmele, however, while purporting to raise such a claim, raises several arguments that are clearly not directed to the indictment's failure to state an offense. He does not argue that the indictment fails to set forth the essential elements of the crimes or that it fails to adequately specify the time,

---

[6] Although Roemmele focuses primarily on internet communications, the indictment also sets forth several other fraudulent uses of the wires, including wire transfers, telephone calls, and facsimile transfers, all of which are governed by the wire fraud statute. Indictment at 10 ¶ 24, 11 ¶¶ 25-26, 12 ¶¶ 27-28, 13 ¶ 29, 15 ¶ 37, 17 ¶ 43, 18 ¶¶ 45-47, 19 ¶ 49, 22 ¶ 61, 24 ¶ 71, ¶ 73, 30 ¶¶ 3-6, 31 ¶¶ 7-8, 32 ¶¶ 9-11, 33 ¶¶ 12-14, 34 ¶¶ 15-17, 35 ¶¶ 18-21, 36 ¶¶ 22-23 (DE 3). See, e.g, United States v. Phipps, 595 F.3d 243, 247 (5th Cir. 2010) (use of facsimile in fraudulent scheme sufficient to establish wire fraud); United States v. Robertson, 493 F.3d 1322, 1331 (11th Cir. 2007) (use of facsimile machine in scheme to defraud sufficient for a wire fraud conviction); United States v. Hasson, 333 F.3d 1264, 1272-74 (11th Cir. 2003) (fraudulently induced wire transfer payments supported a wire fraud conviction); Bowling v. Founders Title Co., 773 F.2d 1175, 1178 (11th Cir. 1985) (misrepresenting information via telephone sufficient for wire fraud conviction); Hawkins v. United States, 305 F.2d 658, 659 (5th Cir. 1962) (use of telephone sufficient to support wire fraud conviction).

9

place, and participants involved. Nonetheless, to the extent that any portion of his motion may be construed as genuinely raising such a claim, it must be rejected.

### a. The Law – Content of the Indictment

In pertinent part, the Fifth Amendment guarantees to criminal defendants the right to be charged by way of a grand jury indictment. See U.S. Const. amend. V. And the Sixth Amendment guarantees to criminal defendants the right "to be informed of the nature and cause of the accusation" U.S. Const. amend. VI.

The Federal Rules of Criminal Procedure speak to the content required of an indictment, stating that it "must be a plain, concise, and definite written statement of the essential facts constituting the offense charged . . . ." Fed. R. Crim. P. 7(c)(1). The Supreme Court has observed that the Rules "were designed to eliminate technicalities in criminal pleadings and are to be construed to secure simplicity in procedure." United States v. Resindiz-Ponce, 549 U.S. 102, 110 (2007) (citations and internal quotations omitted). The Court has also drawn a contrast between the current rules and the previous common law practice, writing that "[w]hile detailed allegations might well have been required under common-law pleading rules . . . they surely are not contemplated by Rule 7(c)(1)." Id. (citations omitted).

The Supreme Court has provided critical guidance for assessing the constitutional sufficiency of an indictment: it must "first, contain[ ] the elements of the offense charged and fairly inform[ ] a defendant of the charge against which he must defend, and, second, enable[ ] him to plead an acquittal or conviction in bar of future prosecutions for the same offense." Hamling v. United States, 418 U.S. 87, 117 (1974) (citations omitted) (emphasis added). In informing a defendant of the charge, "the language of the statute may be used

10

in the general description of an offence, but it must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offence, coming under the general description . . ." Id. at 117-18 (citations and internal quotations omitted). Similarly, the Eleventh Circuit has made clear that "[a]n indictment that tracks the wording of the statute under which an offense is charged will meet these constitutional requirements if the language sets forth the essential elements of the crime, and adequately specifies the time, place and participants involved." United States v. Harrell, 737 F.2d 971, 975 (11th Cir. 1984) (citations and internal quotations omitted).

Significantly, however, an indictment charging a conspiracy "need not be as specific as an indictment for a substantive count." Id. More particularly, "[n]o overt acts in furtherance of a conspiracy need be alleged in order to survive a motion to dismiss. The specificity that [the law] requires is only that detail necessary to set forth the elements of the offense charged, as opposed to the evidentiary details establishing the commission of the crime." Id. at 975 n.4 (citations omitted) (emphasis added). Similarly, the Supreme Court has observed that "[t]he particularity of time, place, circumstances, causes, etc., in stating the manner and means of effecting the object or a conspiracy . . . is not essential to an indictment." Glasser v. United States, 315 U.S. 60, 66 (1942) (emphasis added). In the Court's view, "[s]uch specificity of detail falls rather within the scope of a bill of particulars . . . ." Id.

"In ruling on a motion to dismiss [an indictment] for a failure to state an offense, a district court is limited to reviewing the face of the indictment and, more specifically, the language used to charge the crimes." United States v. Sharpe, 438 F.3d 1257, 1263 (11th Cir. 2006) (emphasis in original); see also United States v. Critzer, 951 F.2d 306, 307 (11th

Cir. 1992). It is well-settled that "a court may not dismiss an indictment . . . on a determination of facts that should have been developed at trial." Sharpe, 438 F.3d at 1263 (citing United States v. Torkington, 812 F.2d 1327, 1354 (11th Cir. 1987)). When deciding upon the sufficiency of the indictment, the court should view its factual allegations in the light most favorable to the government. See United States v. deVegter, 198 F.3d 1324, 1327 (11th Cir. 1999).

Furthermore, even though the failure of an indictment to state an offense is a fatal defect that may be raised at any time, the countervailing interest in judicial efficiency requires that indictments challenged belatedly be construed in favor of their validity. See United States v. Hargrove, 382 F. App'x 765, 785 (10th Cir. 2010). Moreover:

> If a defendant does not challenge an indictment until after a verdict . . . and if he does not assert prejudice, that is, if he had notice of the crime of which he stood accused, the indictment is to be read with maximum liberality . . . . Under this liberal standard, it is enough that the necessary facts appear in any form, or by a fair construction can be found within the terms of the indictment. Thus, [the court] will find the indictment sufficient unless it is so defective that by any reasonable construction, it fails to charge the offense for which the defendant is convicted.

Id. at 784-85 (quoting Gama-Bastidas, 222 F.3d at 786); see also United States v. Gray, 260 F.3d 1267, 1282 (11th Cir. 2001) (explaining that when indictment is challenged for first time on appeal, it will be found sufficient unless it is so defective that any reasonable construction fails to charge an offense for which defendant was convicted). The Roemmele indictment not only meets this liberal standard, but it is sufficiently detailed and thorough to meet even the highest pleading standards.

12

b. Analysis

Preliminarily, the undersigned notes that the Eleventh Circuit "will not uphold a criminal conviction 'if the indictment upon which it is based does not set forth the essential elements of the offense,'" and the court will, if necessary, "raise sua sponte the issue of whether an indictment properly charges an offense, since that represents a jurisdictional issue." United States v. Seher, 562 F.3d 1344, 1356, 1359 (11th Cir. 2009). By affirming Roemmele's convictions without raising any jurisdictional issue, see United States v. Hein, 395 F. App'x 652, 659 (11th Cir. 2010), the Eleventh Circuit has already implicitly determined that the Roemmele indictment properly states an offense. Yet, even if the Eleventh Circuit had not affirmed the conviction, the undersigned would reach the same conclusion, as the Roemmele indictment, spanning 47 pages, clearly sets forth the essential elements of the each offense and (more than) adequately specifies the time, place, and participants involved.

Roemmele's motion appears to challenge the sufficiency of Counts 1, 2, and 3. Count 1 charges Roemmele and his co-defendants with a RICO conspiracy, in violation of 18 U.S.C. § 1962(d), based on their agreement to conduct or participate in the affairs of an enterprise "through a pattern of racketeering activity." See Indictment at 8 (DE 3); 18 U.S.C. § 1962(c). To prove a RICO offense under 18 U.S.C. § 1962(c), the Government must prove: "(1) that an enterprise existed; (2) that the enterprise affected interstate commerce; (3) that the defendants were employed by or associated with the enterprise; (4) that the defendants participated, either directly or indirectly, in the conduct of the enterprise; and (5) that the defendants participated through a pattern of racketeering activity." United States v. Browne, 505 F.3d 1229, 1257 (11th Cir. 2007). Section 1962(d)

of Title 18 makes it unlawful to conspire to violate § 1962(c).  The gravamen of the

conspiracy charge is the agreement, which can be proved by showing: (1) a defendant's

agreement on the overall objective of the conspiracy; or (2) a defendant's agreement to

personally commit two racketeering acts, thereby agreeing to participate in a single

objective.  Id. at 1263-64.

An examination of Count 1, which spans 28 pages, shows that it accurately tracks

the language of the RICO statute (18 U.S.C. § 1962), sets forth the elements of the

offense, and identifies the time, place, and participants involved. Indictment at 7-8 (DE 3).

More specifically, Count 1 charges:

> From in or about 1996 . . . to and including October 2001, in
> the Southern District of Florida, the Commonwealth of
> Pennsylvania and elsewhere, the defendants . . . being
> persons employed by and associated with an Enterprise . . .
> which Enterprise engaged in, and the activities of which
> affected, interstate and foreign commerce, did knowingly,
> willfully and unlawfully combine, conspire, confederate and
> agree . . . to violate Title 18 United States Code, Section
> 1962(c), that is, to conduct and participate, directly and
> indirectly, in the conduct of the affairs of the Enterprise through
> a pattern of racketeering activity . . . .

Indictment at 7-8 (DE 3).  The pattern of racketeering acts agreed to by the conspirators

consisted of multiple violations of §1343 and other federal statutes. See Indictment at 8

(DE 3).  As concerns the named defendants, the indictment devotes three pages to

outlining their respective roles.  See Indictment at 5-7 (DE 3).  The indictment further

alleges the principal purposes of the Enterprise:

> (A) to generate money for its members through the
> commission of various criminal acts including: mail and wire
> fraud, securities fraud, money laundering and extortion; and
> (B) to conceal the existence and operations of the Enterprise
> from law enforcement detection by obstructing justice.

14

Indictment at 5 (DE 3) (emphasis added). Finally, the Manner and Means section of Count 1 details the various wires employed by the defendants to facilitate the scheme – telephone calls, facsimile transmissions, emails, internet postings, and wire transmissions. See Indictment at 8-28 (DE 3).

Count 2 charges Roemmele with a mail and wire fraud conspiracy, in violation of 18 U.S.C. § 371. Indictment at 28 (DE 3). To prove a § 371 conspiracy, the Government must establish: "(1) an agreement among two or more persons to achieve an unlawful objective; (2) [a defendant's] knowing and voluntary participation in the agreement; and (3) an overt act by a conspirator in furtherance of the agreement." Hasson, 333 F.3d at 1270; United States v. Adkinson, 158 F.3d 1147, 1153 (11th Cir. 1998). Here, the unlawful objectives of the conspiracy were mail fraud (18 U.S.C. § 1341) and wire fraud (18 U.S.C. § 1343). To prove substantive mail fraud under §1341 or wire fraud under § 1343, the Government must establish: "(1) intentional participation in a scheme to defraud, and, (2) the use of the interstate mails or wires in furtherance of that scheme." United States v. Maxwell, 579 F.3d 1282, 1299 (11th Cir. 2009). A scheme to defraud requires proof of material misrepresentations, or the omission or concealment of material facts calculated to deceive another out of money or property. See id.

An examination of Count 2, the wire fraud and mail fraud conspiracy, shows that it accurately tracks the language of the conspiracy statute (18 U.S.C. § 371), sets forth the elements of the offense, and identifies the time, place, and participants involved. See Indictment at 28-36 (DE 3). More specifically, Count 2 charges:

> From in or about 1998 and continuing up to in or about October 2001, in the Southern District of Florida and elsewhere, the defendants . . . did knowingly and willfully

15

> conspire, combine, confederate and agree among each other
> and with other persons both known and unknown to the Grand
> Jury to: (a) devise a scheme and artifice to defraud and to
> obtain money and property from consumers by means of false
> and fraudulent pretenses, representations and promises, using
> the United States mails and private and commercial interstate
> carriers, in violation of Title 18, United States Code, Sections
> 1341 and 2; and (b) devise a scheme and artifice to defraud
> and to obtain money and property from consumers by means
> of false and fraudulent pretenses, representations and
> promises, using wire communications in interstate and foreign
> commerce, in violation of Title 18, United States Code,
> Sections 1343 and 2.

Indictment at 28-29 (DE 3). In addition, Count 2 identifies the participants, the pertinent

dates, and the misleading conduct. See Indictment at 28-36. Count 2 also incorporates

the Manner and Means section set forth in Paragraphs 21 though 86 of Count 1. See

Indictment at 29 (DE 3). This is followed by 23 overt acts allegedly undertaken in

furtherance of the conspiracy; these overt acts detail the transmission of false and

fraudulent representations through mail, telephone, facsimile, and wire transfers. See

Indictment at 29-36 (DE 3).

Count 3 charges Roemmele with a money laundering conspiracy, in violation of 18

U.S.C. § 1956(h); that provision makes it illegal to conspire to commit any offense defined

in § 1956 or § 1957. Indictment at 36 (DE 3). The "specified unlawful activities" set forth

in that count are mail fraud and wire fraud. Indictment at 37-38 (DE 3). "To obtain a

conviction for a . . . money laundering conspiracy . . . the government bears the burden of

proving beyond a reasonable doubt that: (1) two or more persons agreed to commit a

crime, in this case a . . . money laundering violation; and (2) that [the defendant], knowing

the unlawful plan, voluntarily joined the conspiracy." United States v. Martinelli, 454 F.3d

1300, 1310 (11th Cir. 2006).

16

An examination of Count 3, the money laundering conspiracy, shows that it

accurately tracks the language of the statute (18 U.S.C. § 1956(h)), sets forth the elements

of the offense, and identifies the time, place, and participants involved. Indictment at 36-37

(DE 3). More specifically, Count 3 charges:

> From in or about 1998, through on or about October 2001, in
> the Southern District of Florida and elsewhere, the defendants
> . . . did knowingly conspire, confederate, and agree with each
> other and with other persons known or unknown to the Grand
> Jury to commit offenses against the United States, that is, to
> violate Title 18, United States Code, Sections 1956(a)(1)(A)(i)
> and (B)(i) and Section 1957.

Indictment at 36-37 (DE 3). The purpose and object of the conspiracy was to:

> [K]nowingly and willfully conduct and attempt to conduct
> financial transactions affecting interstate and foreign
> commerce, that is, issuing checks drawn upon, and
> transferring funds from, bank accounts, which transactions in
> fact involved the proceeds of specified unlawful activity, that is
> mail fraud in violation of Title 18, United States Code, Section
> 1341 and wire fraud, in violation of Title 18, United States
> Code, Section 1343 with the intent to promote the carrying on
> of said specified unlawful activity, and knowing the transactions
> were designed in whole and in part to conceal and disguise the
> nature, location, source, ownership and control of the proceeds
> of said specified unlawful activity and knowing that the property
> involved represented the proceeds of some form of unlawful
> activity; and . . . knowingly and willfully engage and attempt to
> engage in monetary transactions affecting interstate and
> foreign commerce in criminally derived property that was of a
> value greater than $10,000, which was from specified unlawful
> activity, that is, mail fraud in violation of Title 18, United States
> Code, Section 1341, and wire fraud in violation of Title 18,
> United States Code, Section 1343.

Indictment at 37-38 (DE 3). The Purpose and Object section is followed by a Manner and

Means section, which incorporates (by reference) paragraphs 21 through 86 of the Manner

and Means Section of Count 1 (RICO). See Indictment at 38 (DE 3).

17

In sum, Counts 1, 2, and 3 track the wording of the respective statutes under which they are brought; they also set forth the essential elements of the crimes charged, and they set forth in great detail the criminal conduct alleged, including the time, place, and participants involved. By virtue of this detail, each count fairly informs Roemmele of the charges against which he must defend and enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense. Accordingly, Roemmele's argument that the indictment fails to state an offense is amply rebutted by the language of the charging document.

### 3.   Sufficiency of Trial Evidence

Roemmele further argues that the alleged "overt[ ]acts are legally insufficient to support a wire fraud violation, and conviction, because the trial evidence established that they occurred via 'Internet communications' – and 'Internet communications' are not within reach of the wire fraud statute . . . ." Motion–Offense at 18 (DE 773).  To the extent Roemmele is arguing that the overt acts established at trial do not support a wire fraud conviction, his argument is untimely; it is not one of the two excepted claims – jurisdiction, failure to state an offense – that may be raised at an time that the case is pending.  See Fed. R. Crim. P. 12(b)(3)(B).  Moreover, it has already been rejected by the Eleventh Circuit. In its decision, the Eleventh Circuit made clear that the evidence at trial did support the mail and wire fraud conspiracy conviction: "Taking into consideration the oral arguments, the record, and the parties' briefs, we conclude sufficient evidence does exist to convict . . . Roemmele for both RICO conspiracy and conspiracy to commit mail and/or wire fraud." United States v. Hein, No. 07-10718, 2010 WL 3549952 at *2 (11th Cir. Sept. 14, 2010). Yet, even if this Court were to disregard the (un)timeliness of the motion and the Eleventh

Circuit's conclusion, Roemmele's argument would fail, as it is predicated on the erroneous assumption that fraudulent internet communication is beyond the reach of the wire fraud statute. See case cited supra at 8-9.

### 4.    Vagueness Challenge

Although raised in a motion purporting to challenge whether the indictment states an offense, Roemmele's final argument is that the wire fraud statute is vague, as applied to him.   To the extent that Roemmele's motion is asserting a constitutional vagueness challenge, it is untimely; it is not one of the two excepted claims – jurisdiction, failure to state an offense – that may be raised at any time while the case is pending. See Fed. R. Crim. P. 12(b)(3)(B).  Yet, even if the court were to consider Roemmele's vagueness challenge, it must be rejected.

"It is well established that vagueness challenges to statutes which do not involve First Amendment freedoms must be examined in the light of the facts of the case at hand." United States v. Mazurie, 419 U.S. 544, 550 (1975); United States v. Conner, 752 F.2d 566, 574 (11th Cir. 1985).  "A criminal statute is unconstitutionally vague if it 'fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden.'" United States v. Ortega-Torres, 174 F.3d 1199, 1200 (11th Cir. 1999) (quoting United States v. Batchelder, 442 U.S. 114, 123 (1979)).  Although a specific intent requirement does not insulate a criminal statue against all vagueness challenges, "it does relieve the statute of the objection that it punishes without warning an offense of which the accused was unaware."  Screws v. United States, 325 U.S. 91, 101-02 (1945).  Significantly, wire fraud is a specific intent crime.  Conner, 752 F.2d at 574

The wire fraud statute prohibits any use of wires to further a scheme or artifice to

19

defraud.  See 18 U.S.C. § 1343.  In the Eleventh Circuit, "[a] scheme to defraud involves the making of misrepresentations intended and reasonably calculated to deceive persons of ordinary prudence and comprehension." Beck v. Prupis, 162 F.3d 1090, 1095 (11th Cir. 1998).  Here, the wire fraud statute clearly gave Roemmele fair notice that any use of the wires to further a scheme to defraud – including misrepresenting the purported internet products that his company (CITX) had allegedly built and offered for sale – is forbidden. See, e.g., United States v. United Memorial Hosp., No. 1:01CR238, 2002 WL 33001119 at *4 (W.D. Mich. July 23, 2002) ("conspiracy and mail fraud and wire fraud statutes have in the past sustained vagueness challenges in federal cases"); Stewart, 872 F.2d 957, 959 (person of ordinary intelligence would have understood that the use of wires to obtain products at reduced prices by intentionally misrepresenting the nature and the intent of the purchaser violated § 1343); see also, e.g., Conner, 752 F.2d at 573-74 (§ 1343 conveys sufficiently definite warning as to the use of wire transfers in a scheme to defraud); United States v. Louderman, 576 F.2d 1383, 1388 (9th Cir. 1978) (§ 1343 sufficiently advised defendant that use of the telephone in a scheme to defraud constituted wire fraud).[7]

In sum, the wire fraud statue (18 U.S.C. § 1343) is not unconstitutionally vague, as applied to Roemmele. The statute gave him fair notice that any use of the wires in furtherance of a scheme to defraud is forbidden.

IV.    RECOMMENDATION

In conclusion, Roemmele was indicted by a lawfully empaneled jury.  The grand jury

---

[7] To the extent Roemmele claims that the wire fraud statute is vague because it does not govern fraud committed via internet, his claim must fail as it is based on a faulty assumption. See supra Part III(C)(1).

cover sheet that accompanied the indictment reflects that it was returned within 4 months of the grand jury being empaneled and, therefore, well within the prescribed 18-month period. In addition, the indictment clearly states an offense against Roemmele. Each count of the indictment sets forth the elements of the offense charged, fairly informs Roemmele of the charge against which he must defend, and enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense. Roemmele's argument to the contrary is based on the erroneous assumption that internet transmissions are not wire communications within the meaning of the wire fraud statute, § 1343. Courts have long held that internet communications, wire transfers, telephonic communications, and facsimile transfers are all governed by the wire fraud statute. Finally, the wire fraud statue (18 U.S.C. § 1343) is not unconstitutionally vague, as applied to Roemmele. A person of ordinary intelligence would understand that a scheme to defraud purchasers through the use of the wires – be they internet communications, wire transfers, telephone calls, or facsimile transfers – is forbidden by the wire fraud statute.

Accordingly, the undersigned respectfully RECOMMENDS that the Motion by Defendant Bernard Roemmele, Pro Se, Pursuant to Rule 12(b)(3)(B), to Dismiss Indictment – Because the Indictment was Returned after the Grand Jury's Term Expired and is Therefore Invalid (DE 772) be DENIED. The undersigned further RECOMMENDS that the Motion by Defendant Bernard Roemmele, Pro Se, Pursuant to Rule 12(b)(3)(B), to Dismiss the Indictment, Because it Fails to State an Offense (DE 773) be DENIED.

The parties will have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with the Honorable James I. Cohn, United States District Judge. Failure to file objections timely

21

shall bar the parties from a de novo determination by the district judge of an issue covered in the report and shall bar the parties from attacking on appeal factual findings accepted or adopted by the district judge except upon grounds of plain error or manifest injustice. See 28. U.S.C. § 636(b)(1); Nettles v. Wainwright, 677 F.2d 404, 410 (5th Cir. Unit B 1982) (en banc).

DONE and SUBMITTED at Fort Lauderdale, Florida this _____ day of August 2011.

BARRY S. SELTZER
United States Magistrate Judge

Copies furnished to:

Honorable James I. Cohn
United States District Judge

Bernard Roemmele
58547-066 Unit 1
Federal Prison Camp
P.O. Box 2000
Lewisberg, PA 17837

All counsel of record

# ATTACHMENT

AO 190 (9/91)

# *United States District Court*

SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA

v.

BERNARD ROEMMELE, et al.

RECORD OF GRAND JURORS
CONCURRING

04-60206

CASE NUMBER:
FL 05846

GR-COHN

MAGISTRATE JUDGE
SNOW

I, the foreperson of the grand jury of this court, begun and held at Fort Lauderdale on the 7th day of May, 2004, hereby file with the clerk of the court as required by Rule 6(c), Federal Rules of Criminal Procedure, a record of the number of grand jurors concurring in finding an indictment in the above case, which record shall not be made public except upon order of the court:

_____ _____ grand jurors concurring.

August 24, 2004
Date

FGJ#04-01(FL)                    Foreman.